NICK BOHANAK aka NICK MA'AFALA, Plaintiff

v.

SAMOA MARITIME, INC., and GEORGE POYSKY, Defendants

High Court of American Samoa
Trial Division

CA No. 002-88

April 18, 1989

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, OLO, Associate Judge.

Counsel: For Plaintiff, Asaua Fuimaono
 For Defendants, Togiola T.A. Tulafono

Plaintiff's aiga bus was involved in a collision with a backhoe/loader belonging to the defendant corporation. Plaintiff sues in damages for certain repairs to the bus and for loss of revenue during the repairs.

## Liability

The driver of the bus testified that on the day in question he was heading westbound, and travelling within his proper lane, in the vicinity of Lauli'ifou. He further testified that towards the crest of the hill at the end of the village, he noticed a backhoe off the road on the opposite sami side. As he was passing the machine, it somehow backed onto the eastbound lane with its hoe extending in such a manner that it caught the side of the bus to the rear of the driver's side. A supervisor employee of the corporation testified that he and his crew were involved with laying pipe lines in the vicinity and that the operator was sent on the backhoe to pick up a load of sand. The

12

backhoe was not attended by a flagman although this supervisor testified about certain safety requirements imposed on them to have warning signs at intervals of 1000 feet. The operator was not called to testify.

We find on the evidence that defendant corporation's employees were negligent. The backhoe's driver did not keep a proper lookout for normal traffic on the road; the bus was travelling in its proper lane with the right of way; and the backhoe was unattended by a flagman.

On the other hand, we give little weight to the counter testimony offered on defendants' behalf to the effect that this particular bus driver had been the cause of many past complaints from their flagmen, and that ensuing damage to the bus should have been much greater if the bus driver's testimony is to be believed. Such evidence is hearsay and invites speculation. Indeed it is more consistent with the resulting damage that the bus driver was travelling at a moderate rate of speed. Given the total loaded weight of the backhoe, as testified to by Mr. Poysky, the damage would have been much more devastating if the bus had been travelling at greater speed. In fact, the bus was brought to rest with the hoe of the machine resting against the bus. We accordingly reject defendants' claim of comparative negligence on the part of the driver. At the same time, we find no actionable claim established against Mr. Poysky personally, a shareholder and employee of the defendant corporation, and accordingly dismiss the complaint as to him.

<u>Damages</u>

Plaintiff testified that subsequent to the collision, which occurred on November 18, 1987, he offered to settle the matter for the sum of $3,000.00. Defendant, however, rejected this proposal and instead offered to have its own carpenters repair the bus. Plaintiff stated that he had agreed on the assurance that defendant had qualified personnel to do the work and that defendant would pay him $70 a day for lost income.[1]

---

[1] The figure of $70.00 was given by plaintiff as the average daily turn in by the bus driver. In turn, the driver's income was based on a rate of 30% of that return.

13

The bus was then taken to defendant's yard on November 20, 1978.[2]

Plaintiff testified that he visited defendant's yard on November 24, 1978 and was disappointed with the progress of the repairs. He was told that the type of glass used on the bus was not available on island and he therefore told Mr. Poysky to use an alternate as he wanted the bus on the road again. He again went to check on the bus the following day and was again disappointed with the extent of repairs. Plaintiff stated that he then offered to take back the bus in exchange for the materials acquired by the defendant for repairs plus $1000. He was told that defendant preferred to finish repairs to the bus and Mr. Poysky wanted to consult with the corporation's attorney. The bus was finally delivered to him on December 2, 1978 in a condition which, according to plaintiff, greatly angered him. He said the windows were improperly set and incomplete as a curved rear corner window was not replaced; that the repair work was not properly finished nor painted; and that some of the seats remained bent. Not knowing how to secure his rights, plaintiff said that he then sought out the defendant's attorney for assistance and informed the attorney that he was willing to settle for $1500 to finish the bus repairs. The attorney referred him to the corporation's insurance carrier who proved to be of no help and eventually plaintiff engaged his own lawyer. Somehow plaintiff was under the impression that the defendant's attorney was going to view the bus and he held off finishing the repairs which he finally commenced, after further consultation with his own counsel, on December 17, 1978. Plaintiff went on to state that he took four days to finish the repairs and that in the process it had cost him $200 in paint and primers and about $500 in labor. Plaintiff prays for these costs plus $70 a day representing an average of income lost, as well as punitive damages.

---

[2] Mr. Poysky testified that the offer to repair was not an admission of fault. He averred to a company policy of not referring every accident involving their machines to their insurance carrier. Instead they have in the past handled minor damage on their own without concern for fault as a gesture of goodwill to the public. Mr. Poysky stated, however, that this was one case which they just could not give in on entirely.

14

For defendant, Mr. Poysky denied any agreement to pay plaintiff $70 a day. As far as he was concerned, his company had offered to repair the bus and that the work done on the bus by his carpenters was of good workmanship. He testified that the bus was not however painted by the company's carpenters as plaintiff had made clear to them that he would do the painting because he had a stencil for the bus logos. Defendant's evidence went on to point out that after stripping the bus's relevant side panels and uprights, the carpenters encountered much wood rot. At Mr. Poysky's instructions, the rotting wood was replaced and a whole new tire well built. According to Tony Caldwell, an employee of defendant, they had rebuilt beyond the damage resulting from the collision and structurally the framework was restored to its former, if not a better, condition. He further testified that the bus repairs were completed within a week and that they were unsuccessful in contacting plaintiff by telephone. The carpenters' time sheets presented as evidence by defendant indicated that work ended on November 28, 1987.

On the foregoing, the following damages are found proven and awarded plaintiff: (a) $500.00 being 4 days labor costs incurred by plaintiff to completely restore the bus to a finished and painted condition; (b) of the $200.00 sought as the cost of materials to finish the bus, we allow only the sum of $160.00 as justified on the receipts submitted; (c) on the claim for lost revenue, we award damages for income lost between November 19, 1987 and December 1, 1987 and for the 4 days of restoration by plaintiff, which we find to be 13 working days (inclusive of Saturdays) at the daily rate of $42 .00 per day[3] or $546.00.[4]

Judgment will accordingly enter in favor of plaintiff, Nick Bohanak, against the defendant, Samoa Maritime, Inc., in the sum of $1,206.00.

---

[3] See footnote 1 supra.

[4] Except for the four work days incurred by plaintiff in finishing the bus, we have disallowed any claim for lost revenue during those days the bus was in plaintiff's possession. This conclusion is consistent with plaintiff's duty to mitigate damages. Additionally, we find nothing on the evidence to support the prayer for punitive damages.

It is so Ordered.